In this cause Judge Haywood was of opinion that, although the former writ of error had been non prossed, the same having been brought up within the time which practice had authorized, but not within the time which a recent interpretation of a rule of practice required, that another might be obtained by application to the clerk within a year, and that a judge, if he thought proper, might grant a new supersedeas. Whyte and Beown, JJ., were of a contrary opinion, but 'Peck, J., was of the same opinion with Judge Haywood. He had been retained in the cause and had received *93 no fee, and bis opinion was against his client. Mr. Miller objected to him, that the late act of Assembly of 1822 excludes a judge who had been employed unless admitted by the consent of parties. That this exclusion was in words similar to those of the Constitution, excluding judges who were connected by affinity or consanguinity, was slightly adverted to, but in this case judgment was given according to the opinion of Whyte and Brown.
The arguments employed against the dismissal were in substance that, in all the Acts passed relatively to this Court since its erection, the general wish which the Legislature had manifested was that the avenues to it should be as open and as easy of access as possible. The Legislature cannot foresee every casualty that may happen to obstruct a recourse to this Court; and, if they could foresee, the whole of them could not be conveniently recited in an Act. Wherever they made a general provision, therefore, another case happening not precisely the same in all circumstances with that described in the Act, but in equal mischief with it and capable of the same remedy, should be considered as within its comprehension. It has frequently happened that cases within the letter, and precisely the same as that described in the law, are clearly out of its meaning ; and, that other times, that cases out of the letter are within the spirit and equity of the law; and, in all cases of remedial laws, the rule is to judge by the spirit and not by the letter, the rule being in such case Qui hceret in litera, hceret in cortice. This question arises upon the Act of 1811, ch. 72, § 14, which clearly is a remedial law, and gives additional modes of getting to the Supreme Court which were not mentioned in the Act of 1809, ch. 49, which established this Court. Under the former Act a writ of error was to be applied for to a judge. By the latter, an appeal in the nature of a writ of error may be prayed in the same term that judgment was rendered in the cause, and if the dissatisfied party had failed to pray an appeal in the nature of a writ of error, he was at liberty within the year to pray for a writ of error before the clerk, to obtain a copy of the record, to present it to a judge for a supersedeas, and to deposit the whole with the clerk of the Supreme Court. The failure to pray for the appeal in the Circuit Court might be occasioned by an impossibility ; the appellant might be absent, or might not be able to give security, or might not be apprised of the matter of law in his favor. These and similar obstructions the Legislature have removed out of the way, .as obstacles which ought not to impede the remedy by writ of error. If their meaning and the operation of the Act be bounded by the letter, then, if the party after praying an appeal be unable to get security during the term, or be prevented from giving it by sickness, imprisonment, or management of his adversary, or other insuperable cause, though he be able to give it after the term, he shall not be permitted to do so. The meaning of the law must be an' effectual prayer, such as gives him *94 the benefit of the desired re-examination ; not a mere nominal prayer, unproductive of the contemplated object. For why, in sound reason, should that repel a second writ, if the party came within the reasonable time prescribed bylaw? And, if such a prayer without security given shall not repel a second writ, why shall a prayer followed by all the requisites of law, except one, he more fatal ? Why shall a prayer followed by no requisite, either of security given, errors assigned, a copy taken, or depositing in the office, be more favored than one where the security is given, the errors assigned, a copy obtained, and the whole deposited in the time required by practice, though not within the time which a late construction of the rule required ?
If a prayer and nothing done shall not be so far imputed as a fault to the appellant as to bar another writ, by parity of reason, a prayer and everything done but depositing the record in due time will not be imputed as a greater fault, and will not bar the appellant. The consequence must follow either that the praying an appeal and not giving security during the term, will bar the appellant from having his appeal under the Act of 1811, or that praying an appeal and doing all that is necessary except filing the record in due time, will not bar another writ if taken within the year. And as there is nothing to induce a belief that the Legislature meant the former, so neither is there to induce a belief that the latter was meant. “ Where the party shall have failed, &c.” is of the same import as “ although he may have failed, &c.”; nor is it conceived that the negligent appellant who fails to pray an appeal, can be viewed in a more favorable light than one who prays an appeal in time, gives security, and performs every requisite but one, which the rule makes incumbent upon him, and that one a matter of form which he does not perform, under an innocent mistake into which his counsel and himself have been led by former unquestioned practice. Much less can he be viewed in a more favorable light than one who, having done some of the most essential requisites, is proceeding in due time to do the remainder when, by death, sickness, or irresistible accident, he is prevented from doing the residue, as if on his way to the office with the record, he is stopped by high waters, the death or stealing of his horse, unlawful detention of his person, or sudden and violent sickness, shall he not be excused in reason, as well as the one who has not even taken the pains to pray an appeal ? If for gross negligence, in not using at the proper time the opportunity which the law gives him, he shall not lose his appeal, must not the meaning of the law be that for inevitable misfortune, after using all possible care, he shall not lose his appeal ? If so, it is impossible that his right to obtain it under the 14th section as aforesaid, can be restricted to the single instance where he has not prayed it in the Circuit Court.
Wherever a strong and clear wish of the Legislature can be perceived, *95 from the general context of a law, or of various laws, passed at different periods to advance any certain object, its views ought to be seconded by judicial assistance. Upon this subject it may be safely remarked, that the uniform desire of the Legislature to make free and unincumbered the use and benefit of the writ of error, is manifested by various provisions made in different successive years, which are all evincive of that purpose.
Writs of error to the Circuit Court were subjected to bond and security, for performing the judgment of the appellate court; 1794, ch. 1, §§ 37, 65; 1807, ch. 81, § 3; but writs of error to the Supreme Court are allowed of upon bond and security given, to pay the damages and costs, on failure of the plaintiff in error to make his plea good. 1809, ch. 49, § 26; the same provision, 1811, ch. 72, §§ 11 and 12; the same, 1813, ch. 78, § 2; 1817, ch. 82, § 8. And fearing the loss of this writ, and of the benefits to be derived from it by some technical refinement, they have carefully provided, 1811, ch. 72, § 14, that no writ of error, assignment of error, or other proceeding in any of the courts of error, shall be quashed or
dismissed for any defect, omission, or imperfection, “but said courts shall and may, from time to time, allow either of the parties to amend the same, as other amendments are allowed of in the other courts of this State.” So many provisions, all tending to one and the same object, namely, to make the writ of error effectual, and to prevent its untimely subversion by the interference of intermediate occurrences, antecedently to an examination upon the merits, make plain the main and ruling spirit of all these laws, which is to have an examination upon the merits and to prostrate minor impediments that go in frustration of that end. The equity of the Act puts upon the same footing every abortive attempt to obtain an effectual writ, when the abortion is caused not by the wilfulness, but by the mistake or misfortune, of the appellant. Rules of practice, though unequivocal, and directly opposed to a retention of the cause, might, it is true, on a particular occasion which called for it, be laid aside by the Court. But then the rule would be no longer a rule, but a recommendation, and in every instance there must be an appeal to the discretion of the Court, whereby a rigid adherence to the rule, a regular practice would be kept up, and nothing would be in the discretion of the Court; but everything depend on the spirit of the Act made by the Legislature. To break a rule at pleasure and to construe soundly an act of the Legislature are two distinct things, and of such a .nature that the former can never he rendered proper by the latter. A salutary rule can never be demolished by a salutary understanding of the law. And here, without breaking down either the one or the other, they can both stand, have the completest effect, and do the most perfect justice; whereas, if the rule be broken, we have no standard of practice, and if the spirit of the law be rejected, we have no justice. The letter and form of the law will admit some and reject others, who are equally meritorious in *96 all respects, and whose only fault has been the occurrence of some inevitable adversity. Such were the opinions of Judges Peck and Haywood, at the last term at Nashville, where the appeals from the Circuit Court bad been so numerous that the clerk could not make up the transcripts in time to be filed before the ultimate period allowed by the rules made by the judges for regulating the practice of the Court. The Court gave them relief, in what manner is not exactly remembered. And if they were entitled to relief, why not also the present appellant, or any other appellant, who is hindered from an effectual prosecution of his writ by a cause which he could neither foresee nor prevent ? Why not resort to the same legal principles which induced the courts of North Carolina to issue writs of certiorari for the removal of records into their courts, where, by some inevitable cause, appeals in the usual course were defeated.
On the other hand, it was said in substance that a law made by the Legislature is paramount to a rule of practice made by the judges, and that the latter ought to be abandoned rather than that the former should be relaxed; and that in the present instance it would have been better to have received the record, though sent out of time, than to add, by judicial authority alone, a new case for an appeal, which the law has not mentioned. The jurisdiction of courts should be confined to the limits which the Legislature prescribes, and should not be permitted to encroach beyond them. Here the law has allowed of a writ of error by application to the clerk of the Circuit Court, where' an appeal has not been prayed, and the attempt now is to have a second writ of error, after the former has been prayed for and obtained, and been dismissed. This attempt is in direct contravention of the words of the law. If this part of the restriction can be overlooked and disregarded, and a second writ of error be maintained, although a former has been prayed for, what is there to restrict the application to one year, and to hinder that provision likewise from being infracted. The latter is not more clear or positive, then, than the other, nor is it at all more sacred or inviolable than the former. Courts here often show too much aptitude for the enlargement of jurisdiction; it is a propensity which much more deserves to be checked than encouraged.
Note. — After the first writ of error was dismissed for not being brought up in time, as the same was ascertained by a late interpretation of the rule made by Judges Whyte-and Haywood, both of them granted a super-sedeas upon a new writ of error, but this being upon the former transcript, and not upon a new one made for the purpose, a new one was afterwards obtained, and upon that another supersedeas was granted by Judge Haywood- Mr. Miller at the present term moved for a dismissal upon the grounds above stated, and after hearing counsel upon the discussion of this point, they were directed to argue the cause upon its merits, that the Court, *97 before giving an opinion, might have the whole cause before them. One of the points made by the record was upon the correct rule for the assessment of consequential damages. The defendant below had sold a horse to the plaintiff, which the latter alleged had the glanders, a contagious and fatal distemper, with which fact the defendant was acquainted at the time of the sale. And that the plaintiff was a wagoner, who was accustomed to drive several teams from Knoxville to Baltimore and back, for the removal and transportation of goods from the one place to the other, and that after putting into one of his teams the horse in question, which he purchased of the defendant for one hundred and twenty dollars, the horses of all the teams, eighteen in number, were taken with the same complaint and died of it. The jury assessed damages one thousand five hundred dollars, and the judge, upon looking into the record, was desirous that a discussion should be had upon the point, whether the right rule in the assessment of damages had been adopted in the present instance, and these were the grounds upon which he went: —
The rational rule for the assessment of damages, as it seemed to him, could only be ascertained by considering the instances in which consequential damages are not to be allowed, and others in which they are, and by fixing upon the reason of the difference. Consequential damages are certainly allowable in some instances, and in others not. The difference is not founded in the distinction between contracts and delinquencies. Remote and unexpected consequences are not retribu ted. If I sell a horse to A as a gentle horse to draw his carriage, and the horse be habitually one that will run away with a carriage, and he do so, and break the carriage and kill the driver, the vendor is not answerable for this consequence; and why ? It must be because it was not a necessary and foreseen consequence. If I stipulate to pay money at a certain day to A and fail, whereby A’s property is set up and sold at reduced prices for satisfaction of an execution, I am not liable for this loss ; why ? Because not a necessary cause of my failure, — for the money might have been borrowed of others ; the necessary consequence is only the loss of the value of the use, and for that only is the creditor entitled to compensation in damages. If I set fire to a dead tree near a house, and in consequence thereof the house be burnt, I will be answerable for the value of the house, because the consequence was morally certain; but if a high wind arise and carry the sparks from this house into a neighboring village, I will not be liable for the houses that shall be burned in it, because this was not a certain and foreseen consequence. If one buy a cask from a cooper to put vinegar in, which he aflirms to be sound and tight, and it have worm holes and be leaky, and the buyer put in the best champagne instead of vinegar, the cooper shall not be liable for the value of the champagne, because the putting of that into the cask was unforeseen and unexpected. But if the buyer put vin *98 egar in and it be lost, the cooper shall he liable for that, as a foreseen and expected consequence. If the seller affirm to the vendee that the horse which he sells is sound, and he be a distempered horse and incapable of service, the immediate and foreseen consequence is that the vendee will lose the service expected, and shall be compensated for the difference between his real and expected value. But suppose he has a contagious and fatal disorder, and the vendee knew of and concealed it, and he gave that disorder to the other horses of the vendee, and they all die, and by reason thereof the vendee lost his crop, not being able to cultivate it for want of horses, and by reason of this disappointment his creditors sue him, and his property is sold at execution sale for sums greatly below its value, and in consequence he become insolvent, and in consequence thereof he is discharged by a lady who otherwise would have married him, and whose fortune is worth one hundred thousand dollars, — shall the vendor be answerable for all these consequences ? Or, if answerable for some and not for others, what is the reason of the difference ? The vendor is not liable for the loss of the crop, for that was not a certain consequence; the vendee might have hired or purchased other horses, or have leased out his lands. Neither is the vendor liable for the consequences subsequent to the loss of the crop, because they were still less foreseen. Remote, unexpected, and unforeseen consequences are not to be compensated, but those only which the vendor must have foreseen and expected, and which were morally certain, he shall be liable for. Is the communication of this distemper to the other horses such a consequence ? It was morally certain that a horse bought for one of a team would spread the contagion to all the horses of that team; was it certain, likewise, that he would give it to all the horses of the three or four other teams ? This seems, in a good measure, to depend,upon the question whether the seller knew that the other teams usually travelled in company with this, and were fed in company with it also ; for then the communication would be morally certain, and would be a circumstance against which the seller had it in his mind to give assurance when he affirmed the soundness of the horse. 1 Rutherforth, 395, 409; Polk, 95, 101, 102, 103 ; 2 B. Rep. 892; 11 Mod. 180; Puff. 215; Grotius, book 2, ch. 7, § 12; 3 East, 200; Tidd’s Prac. 399 ; 1 Comb. N. Prius, 59, 60; 3 Haywood, 142; 1 Chitty on Pleading, 389; B. N. P. 7; 3 Johnston, 271. It seemed not certain upon the record whether the seller knew the species of distemper under which the horse labored, and if he believed it to be a different one, of less pernicious properties, then he could not have foreseen the consequences nor have expected them. These facts, if not sufficiently clear on the record, should be made to appear with certainty before the present assessment should be supported. Wishing to know from a full discussion whether or not they could be fairly collected from the record, a supersedeas was granted, that the argument might come *99 before fhe Court upon this and other points at 'the ensuing term. But owing to the foregoing disposition, only a partial argument was had upon the main question.
It is admitted, without contradiction from any quarter, that a writ, not authorized by 1811, ch. 72, § 14, could not, in legal contemplation, remove the record, and could not legally be made the foundation of judgment in the Supreme Court, either in affirmance of the judgment below or otherwise. Such writ, it is submitted, is a mere nullity, and as if in fact it had never issued. This leads to the inquiry, whether the former dismission for not filing in time or á non-pros, entered for that cause was intended by the framers of the 22d rule for the government of the practice in this Court, to be a perpetual bar to any new writ of error, for if not, that furnishes a strong motive for avoiding any construction upon the words “ shall fail to pray an appeal ” which shall terminate in that result. And it is plain that such will be the event unless a liberal and not a literal construction be given to these words, or unless the appellant may obtain his appeal under 1809, ch. 49, § 26. Now, when it was said in the 22d rule of practice that the defendant or appellant may non-pros, the plaintiff, that term was used as one of known legal signification, and in reference to the general law upon the subject of writs of error; with respect to which an abatement, non-pros, or discontinuance, is no bar to another writ of error; though, in such case, the new writ of error is not in itself a supersedeas, as the former was, but a new writ of supersedeas must be obtained from a judge, if allowed at all. Hence, the use of the term non-pros, implies, that in the opinion of the judges who framed these rules of practice, a new writ of error was not to be barred by it, but might be obtained by some of the modes pointed out in the Acts of 1819, ch. 49, § 26 ; and 1811, chi 72, § 14. But if a non-pros, for not bringing up in time preclude the appellant, when it is otherwise for not praying in time, then such non-pros, is a perpetual bar to a future writ, unless that consequence can be avoided by a writ to be obtained in some other way, and thence it would follow that such a construction, being repugnant to the intent of the non-pros, aforesaid, cannot be accurate and must be relinquished. But it may be said that the deprecated consequence may be avoided by a new writ issued by a judge under 1809, ch. 49, § 26. Be it so; then why put such a construction upon the words “ fail to pray an appeal ” as will dismiss the plaintiff, for no other end than to pay the costs and get the same writ whieh he already has before the Court ? Is it of any importance whether it be obtained from the clerk of a supreme court or the judge of a circuit court? Or of so much importance to have it obtained from the latter, that the writ must be discharged which the former issues in order to get precisely the same writ and for the same purposes from the other ?
As for the matter in hand, it seems immaterial to inquire whether another *100 writ can be obtained from the judge or not. But as the right to obtain it, notwithstanding the dismissal of the present writ, will make reconcilable the non-pros, and the literal construction which is put by two. of the judges on the words “ fail to pray an appeal,” it will be of use to inquire whether that right yet remains to the plaintiff in error. The provisions of the Act of 1811, ch. 72, §§ 13 and 14, were cumulative facilities to open more widely the door to this Court; not a curtailment of the former in any respect. For fear that the circuit judge might not be accessible when the plaintiff in error was ready to obtain his writ, the clerk of the Supreme Court is directed to grant it, and is furnished with co-ordinate authority; the only difference being that his authority is limited in point of time to a year, and that his writ is not of itself a supersedeas. His authority is founded upon failure of the plaintiff in error to pray an appeal from the Circuit Court, but the pre-existing power of the judge is free from that and all other restrictions, and he may issue another writ under 1809, ch. 49, § 26, unless prohibited by the limitation of one year, contained in the Act of 1811, ch. 72, § 14. If this part of the latter Act and section is to be construed literally, as the words “ fail to pray an appeal ” in the same section are, then, most certainly, the limitation of one year attaches only upon writs issued by the clerk of the Supreme Court, by virtue of the Act of 1811, not upon those issued by the judge by virtue of the Act of 1809, § 26. And if this part of the law is to be construed by its equity, the spirit of the law being in favor of writs of error, and to cause them to be obtained with more ease than before, will likewise confine to writs issued by the clerk of the Supreme Court. Acts of limitation in courts of law have never been made by construction to include cases not clearly embraced by the words, although their exceptions are often extended to cases of similar hardship. A law for the multiplication of remedies, when tied down by the letter upon the point of remedy, can never be extended by constructive enlargement to include a provision which fetters the remedy. For, certainly, a remedial law can never be construed with less favor than a law for abridging a remedy. The judge, then, it would seem from these premises, can issue the writ.
The general Act of limitations of writs of error, is that of 1799, ch. 12, which being upon the same subject with subsequent statutes, will be taken as a part of the system. 2 Cranch, 386, 399 ; Douglass, 30 ; Ba. Ab. Statutes, letter b, letter j ; see 3 L. Bay. 1028; 1 Burrow, 447; 3 Mass. T. Rep. 21, 22.
Buies to which the law resorts for the construction of statutes, being the dictates of good sense, have been long since laid down by the best juridical writers; have been often repeated in later times, are in perfect accordance with it, and are well understood by the professors of legal science.
Construction of statutes is reserved to the judges to mould them accord *101 ing to reason and convenience to the best and most honest uses. Where the literal expressions lead to unjust and inconvenient consequences, they .must be avoided. The intent and not the letter must be made to prevail and must be attained by construction, for a matter within' the intent is as much within the law as if it were within the letter. A law made to give a more speedy remedy ought to be construed liberally. Plow. 109; 1 Inst. 381 ; 6 Cranch, 380, 399 ; Plow. 230 ; 11 Pep. 13; Plow. 346; Ba. Ab. Statutes, letter i, §§ 2, 5, and 6,; 1 Bl. Com. 91; 11 Rep. 64.
Note. — In the original note to this case there are, on pages 124, 125, 126, some learned remarks of Judge Haywood upon the subject of the consequential damages which are recoverable at law. Mr. Meigs has, in his Digest, sections 720 and 1058, condensed the substance of these remarks, and referred to them as ruled by the Court. But it will be seen, upon turning to the pages mentioned, that no such rulings were in fact made. The subject is one of grave difficulty, and has been considered by our courts in Hendrick v. Stewart, 1 Tenn. 476; Pettee v. Tenn. Man. Co., 1 Sn. 381 ; McWhirter v. Douglas, 1 Cold, 592, 602; Peyton v. Butler, 3 Hay. 141. —Ed.
An affirmative statute does not repeal an affirmative statute. If one be authorized by an affirmative statute and then another by a new affirmative statute, the former is not excluded. 11 Rep. 64.
Add to this a rule of the common law, that it is the part of a good judge to enlarge jurisdiction for the attainment of justice; and the genius of the system will reject a literal construction of every sentence which tends to diminish the causes for which, or the means by which, a writ of error may be obtained. Particular phrases in apparent opposition to the general scope of the law, will be made to confirm the general intent.
The law upon this point now oscillates according to the presence of the judges who are not disqualified. So, for want of a solemn decision does the law of 1822, ch.-, and the Constitution, Art. 5, § 8 ; the doubt being whether both parties can make the objection, or only him against whom the bias is supposed to lie, from the connection of the judge with his adversary. It is equally unsettled whether the Legislature can impose a disqualification that the Constitution has not, or whether a judge, disqualified or exempted in one case, is so in all cases depending on the same points between other parties.